IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BARRY B. KREISLER, | ) | USBC Case No. 02 B 21934 |
| | ) | |
| Debtor, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MARSHA ERENBERG, | ) | USBC Case No. 02 B 21935 |
| | ) | Hon. John H. Squires |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| GARLIN MORTGAGE CORP., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | No.   05 C 6593 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| BARRY B. KREISLER, et al., | ) | |
| | ) | |
| Appellees. | ) | |

**MEMORANDUM OPINION AND ORDER**

Appellant Garlin Mortgage Corp. ("Garlin") appeals from a final order of the United States Bankruptcy Court for the Northern District of Illinois equitably subordinating Garlin's entire secured claim to that of all unsecured creditors. The bankruptcy court had jurisdiction pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a), because the action arises under Title XI of the United States Code and arises in and is related to Chapter 7 cases In re: Barry B. Kreisler, 02 B 21934 and In re: Marsha D. Erenberg, 02 B 21935. This court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1). This court reviews the bankruptcy court's findings of facts under a

clearly erroneous standard. Conclusion of law are reviewed de novo. Mungo v. Taylor, 355 F.3d 969, 974 (7th Cir. 2004).

The bankruptcy court issued a 28 page opinion concluding that Garlin's secured claim should be equitably subordinated under 11 U.S.C. § 510(c) to the claims of the unsecured creditors for two reasons: (1) Garlin engaged in inequitable conduct; and (2) Garlin failed to comply with Fed. R. Bank. P. 3001(a)(2). Garlin does not challenge the bankruptcy court's factual findings, only the court's application of those facts to the law. Because this court agrees with the bankruptcy court's conclusion that Garlin's inequitable conduct warrants equitable subordination, it need not reach Garlin's challenge regarding Rule 3001. For the reasons set forth below, the decision of the bankruptcy court is affirmed.

## **FACTS**

Prior to filing for bankruptcy protection, Barry Kreisler ("Barry") and Marsha Erenberg ("Marsha") together owned a limited liability corporation named K&E, L.L.C. ("K&E"). Barry owned 60% and Marsha 40%. K&E, in turn, owned 94.5% of two properties on North Western Avenue in Chicago, Illinois, consisting of two commercial condominium units and three parking spaces (the "Western Avenue Properties"). Barry owned the remaining 5.5 % interest in those properties.

The Western Avenue Properties were encumbered by three mortgage liens. The first was held by Uptown National Bank of Chicago, now know as Bridgeview Bank Group ("Bridgeview Bank"). The second was a mortgage executed by Barry in favor of his mother, Francis Kreisler, to secure a note in the amount of $200,000. The Francis Kreisler mortgage encumbered only Barry's undivided 5.5% interest in the Western Avenue Properties.

Barry also owned a 30% interest in Montana/Ashland L.L.C. ("Montana/Ashland"), a limited liability corporation of which Marsha was a member. On May 22, 2001, Montana/Ashland executed two mortgage notes in favor of Community Bank of Ravenswood ("Community Bank") in the sums of $800,000 and $996,000, for the purpose of acquiring and developing property on North Ashland Avenue in Chicago (the "Ashland Property"). Community Bank received a security interest in the Ashland Property, and the third mortgage on the Western Avenue Property. The junior mortgage on the Western Avenue Property was executed by K&E.

Montana/Ashland defaulted on the notes. Community Bank took a deed in lieu of foreclosure, sold the Ashland Property for $950,000, and applied the proceeds against the outstanding balances due under the notes. The remaining collateral securing the debt to Community Bank under the notes was the Western Avenue Property as a result of the third mortgage.

Barry and Marsha each filed voluntary petitions under Chapter 11 on June 5, 2002. The bankruptcy court ordered the cases to be jointly administered but not substantively consolidated. Both cases were subsequently converted to Chapter 7 and a trustee was appointed. Community Bank filed proofs of claims in the amount of $892,289.99 in each case. At the time of the bankruptcy filings, Barry's assets included a 62.2% ownership interest in the Western Avenue Properties. Marsha owned the remaining 37.8% interest.

On June 3, 2003, Barry created Garlin for the sole purpose of purchasing Community Bank's notes and junior mortgage on the Western Avenue Properties. The principals of Garlin were Linda Horowitz ("Linda"), Barry's sister, and Gary Schnier ("Gary"), Marsha's close

friend. Linda was the president and secretary and on the board of directors. Gary was the vice-president, treasurer and assistant secretary. Neither provided any capital to Garlin, nor performed any duties as officers and/or directors, nor were involved in the formation of the corporation. Both were unaware of any actions taken by Garlin during its existence. Both testified that Barry performed all those tasks on behalf of Garlin.

Garlin held no meetings and conducted no business until October 2003. From March through October, however, Barry and Marsha, through Garlin, attempted to enter into an agreement with Community Bank to acquire its notes and mortgage. Toward that end, Barry sent numerous letters to Community Bank and copied Marsha.

Garlin held its first director's meeting on October 1, 2003. Barry attended and drafted the corporate minutes. On October 16, Garlin passed a corporate resolution to: (1) acquire the notes and mortgages from Community Bank for $16,500; (2) hire Barry to serve as its counsel for that transaction; and (3) borrow funds from K&E Investment, Inc. (another corporation controlled by Barry) to complete the acquisition of the mortgage and notes. Barry was to earn a contingent fee of $3,500 once Garlin acquired Community Bank's notes and mortgage and the Western Avenue Property was sold at foreclosure. Garlin borrowed $25,000 from K&E Investments by executing a note payable to K&E investments, providing for 10% interest and 20% interest upon default. Barry drafted the note.

Garlin purchased the mortgage and notes from Community Bank for $16,500 on November 14, 2003. On December 17, 2003, Community Bank assigned its junior mortgage on the Western Avenue Property, as well as the notes and related loan documents, to Garlin.

4

On July 1, 2004, the bankruptcy court granted the trustee's motions in each case to sell the Western Avenue Property for a total of $371,000 with liens to attach to the sale proceeds. Any party claiming a lien against the sale proceeds was to file a claim with the trustee within 30 days. Garlin filed a claim in the amount of $92,936.78 in each case. Bridgeview Bank also timely filed claims in each case.

The Western Avenue Property sale closed on August 16, 2004. Bridgeview Bank's first mortgage was paid in full in the amount of $253,315.34, leaving the trustee holding $105,443.76. Of this amount, $65,586.02 represented Barry's interest and $39,857.74 represented Marsha's interest in the Western Avenue Property. The bankruptcy court held that Francis Kreisler holds a secured claim in the amount of $302,700 plus interest and attorney's fees secured by, among other things, the Western Avenue Property. As a result of Francis' secured claim, there remains no equity in Barry's or Marsha's estates' interest in the Western Avenue Property.

Garlin moved to have its secured claims deemed allowed, and for such claims to be paid from the proceeds from the sale of the Western Avenue Property. According to the testimony, there remains due and owing to Garlin as Community Bank's successor the amount of $84,258.93 plus interest. The trustee objected, arguing that Garlin's claim should be disallowed as secured for four reasons: (1) Garlin failed to comply with Bankruptcy Rule 3001 governing transfer of claims; (2) by purchasing the mortgage and notes from Community Bank, Barry and Marsha effectuated a merger of interest between the mortgagor and mortgagee of the Western Avenue Property, extinguishing the claim by operation of Illinois law; (3) because Garlin's claims meet the requirements for equitable subordination, equity demanded that Barry and Marsha not benefit from their behavior; and (4) Garlin failed to file its proofs of claim before the

5

bar date. The bankruptcy court agreed with the trustee as to reasons (1) and (3) and equitably subordinated Garlin's claims. Garlin has appealed that decision.

## DISCUSSION

The bankruptcy court held that Garlin's claims should be equitably subordinated under 11 U.S.C. § 510(c), which provides:

> (c)  Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may - -
>
> > (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest.

Whether a claim should be equitably subordinated must be met on a case by case basis. Daley v. Chang, 286 B.R. 54, 83 (Bank. N.D. Ill. 2002). The doctrine of equitable subordination should be invoked only in extreme circumstances and only where a clear inequity has been wrought . . .. Aetna Bank v. Dvorak, 176 B.R. 160, 166 (N.D. Ill. 1994). It is a remedial rather than penal doctrine, and should be applied only to the extent necessary to offset the specific harm that the creditors suffered as a result of the inequitable conduct. Braas Sys., Inc. v. W.M.R. Partners, 157 B.R. 852, 857 (N.D. Ill. 11993).

In the Seventh Circuit, a bankruptcy court must find three conditions before it may equitably subordinate a claim: (1) the claimant must have engaged in some type of inequitable conduct; (2) the misconduct must result in injury to the creditors of the bankrupt or confer an unfair advantage on the claimant; and (3) equitable subordination must not be inconsistent with the provisions of the bankruptcy code. In re: Lifschultz Fast Freight, 132 F.3d 339, 344 (7th Cir. 1997) (citing In re: Mobile Steel Co., 563 F.2d 692, 701 (5th Cir. 1977)).

6

As noted by the bankruptcy court, whether a creditor's conduct is deemed inequitable under § 510(c) depends on the relationship between the creditor and the debtor. Braas, 157 B.R. at 858. Dealings of an insider or fiduciary of the debtor are subject to a higher level of scrutiny than dealings of a non-insider third party. Herzog v. Leighton Holdings, Ltd., 212 B.R. 898, 928 (Bank. N.D. Ill. 1997), aff'd, 239 B.R. 497, 504-05 (N.D. Ill. 1999). If the claimant is an insider, the proponent of equitable subordination has the initial burden of presenting evidence of unfair conduct by a preponderance of the evidence. Herzog, 239 B.R. at 504-05. If the proponent meets that standard, then the burden shifts to the claimant to demonstrate good faith and fair conduct. Id.

The term "insider" is defined in the bankruptcy code. If, as in the instant case, the debtor is an individual, insider is defined in 11 U.S.C. § 101(31)(A) as including a:

    (I) relation of the debtor or of a general partner of the debtor;
    (ii) partnership in which the debtor is a general partner;
    (iii) general partner of the debtor; or
    (iv) corporation in which the debtor is a director, officer or person in control.

This definition is intended to be illustrative rather than exhaustive, and the term also encompasses anyone with "a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms-length with the debtor." In re: Krehl, 86 F.3d 737, 741 (7th Cir. 1996).

The standard of review to be applied to the bankruptcy court's finding on insider status is unclear. The Seventh Circuit views the bankruptcy court's determination as a mixed question of law and fact. Id. Whether that means the decision is reviewed de novo or under a clear error standard is of no import to the instant case because the bankruptcy court's finding that Garlin is an insider of both debtors meets either standard. Although Garlin objects to the bankruptcy

court's conclusion of insider status, it has no objection to the factual findings upon which the court's conclusion was based. For example, Garlin presents no attack on the bankruptcy court's finding that Garlin was controlled and dominated by Barry with Marsha's assistance. Barry was the "driving force" behind the formation of the corporation, for the sole purpose of acquiring the notes and mortgage. Garlin's purported principals, Gary and Linda, had absolutely no role in Garlin's activities and Barry did not consult with them when negotiating the deal. Rather, Barry, with Marsha's assistance, performed all the duties of the corporation. Linda and Gary were principals in name only. Garlin was, in essence, Barry and Marsha's corporation. There can be no question that Garlin is an insider of both Barry and Marsha.

Having correctly determined Garlin's insider status, the bankruptcy court then focused, again correctly, on whether Garlin's conduct was inequitable. As previously mentioned, because of its insider status Garlin's activities are subject to a higher level of scrutiny. Herzog, 212 B.R. at 928. According to Lifschultz, the type of conduct considered inequitable generally falls within three categories: (1) fraud, illegality, breach of fiduciary duties; (2) under-capitalization; and (3) claimant's use of a debtor as a mere instrumentality or alter ego. Lifschultz, 132 F.3d at 344-45. Subordination should be proportionate to the claimant's wrongdoing. "Cases subordinating the claims of creditors that dealt at arms-length with the debtor are few and far between." Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting, 908 F.2d 1351, 1356 (7th Cir. 1990).

As the bankruptcy court noted, the instant case does not fall directly into any of the three categories of an inequitable conduct. The bankruptcy court nonetheless found that the actions taken by Garlin warrant equitable subordination. This court agrees. No dealing between Garlin

8

and Barry and Marsha could be at arms-length.  As the bankruptcy court found, Barry and Marsha's formation of Garlin was itself a scheme to receive some of the proceeds from the sale of the Western Avenue Property to the exclusion of other creditors.  The court agrees with the bankruptcy court's conclusion that Barry and Marsha's conduct in connection with Garlin constituted unfair dealing.

In addition, there can be no doubt that the bankruptcy court correctly found the remaining Lifschultz factors to be present: that the misconduct resulted in injury to other creditors and conferred some unfair advantage on the claimant; and equitable subordination is not inconsistent with the provisions of the bankruptcy code.  Because Garlin is controlled by Barry and Marsha, it will receive an unfair advantage if its claim is allowed, and to do so will cause injury to other creditors who will lose any chance of recovery from the Western Avenue Property.

Nor is there any suggestion by Garlin that equitable subordination in the instant case would be inconsistent with any other provision of the bankruptcy code.  Garlin has not raised this argument on appeal and there is nothing to support such an argument.  Accordingly, because the bankruptcy court correctly analyzed Garlin's claim and correctly decided the issue, the decision to equitably subordinate that claim is affirmed.

## CONCLUSION

For the reasons set forth above, the decision of the bankruptcy court is affirmed.

**ENTER:**

**October 17, 2006**

_____
                                  **Robert W. Gettleman**
                                  **United States District Judge**